**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re:<br><br>DSI RENAL HOLDINGS, LLC, *et al.*,<br><br>Debtors. | ) | Chapter 7<br><br>Case No. 11-11722 (KBO)<br><br>(Jointly Administered) |
| ALFRED T. GIULIANO, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL SCHNABEL, *et al.*,<br><br>Defendants. | ) | Adv. Proc. No. 14-50356 (KBO) |

**MEMORANDUM OPINION**[1]

Before the Court are the following motions for summary judgment: (1) *Motion for Summary Judgment by Defendants Jay Yalowitz, Leif Murphy, Bruce Pollack, Robert Bergmann and Michael Schnabel* [Adv. D.I. 181] (the "D&O Motion"); (2) *The Northwestern Mutual Life Insurance Company's Motion for Summary Judgment on Plaintiff's Aiding and Abetting Breach of Fiduciary Duty Claim* [Adv. D.I. 177]; (3) *Defendant Apollo Investment Corporation's Motion for Summary Judgment on Plaintiff's Aiding and Abetting Breach of Fiduciary Duty Claim* [Adv. Docket No. 185]; (4) *Motion of Defendant Ares Capital Corporation for Summary Judgment on Plaintiff's Aiding and Abetting Breach of Fiduciary Duty Claim* [Adv. D.I. 190] (together with Adv. D.I. 177 and Adv. D.I. 185, the "Aiding and Abetting Motions"); and (5) *Motion of Defendants Apollo Investment Corporation, Ares Capital Corporation, and The Northwestern Mutual Life Insurance Company for Summary Judgment on Plaintiff's Aiding and Abetting Breach of Fiduciary Duty Claim Based on the In Pari Delicto Doctrine* [Adv. D.I. 180] (the "In Pari Delicto Motion" and, together with the D&O Motion and the Aiding and Abetting Motions, the "Motions"). The Motions have been fully briefed and argued and are ripe for adjudication.

## I. JURISDICTION

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). Certain Counts of the Complaint (as defined herein) are core proceedings while others are non-

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

core. The Trustee demands a jury trial for all Counts of the Complaint. No party consents to the entry of a final judgment or adjudication by this Court. Nonetheless, the Court has the authority to hear and enter an order on the Motions.[2]

## II. RELEVANT BACKGROUND

On June 3, 2011 (the "Petition Date"), DSI Renal Holdings, LLC ("DSI Renal Holdings"), DSI Hospitals, Inc. ("DSI Hospitals"), and DSI Facility Development, LLC (each a "Debtor" and together, the "Debtors") filed in this Court voluntary petitions for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). Subsequently, the Office of the United States Trustee appointed Alfred T. Giuliano (the "Trustee") as chapter 7 trustee for the Debtors' estates. On May 20, 2013, the Trustee commenced this adversary proceeding by filing a complaint (the "Complaint") in the United States District Court for the Eastern District of Pennsylvania. Ultimately, the case was transferred to the United States District Court for the District of Delaware and referred to this Court.

The Defendants in this matter include Messrs. Schnabel, Murphy, Pollack, Bergmann, and Yalowitz (together, the "D&O Defendants"), who are former officers and/or directors of one or more of the Debtors or affiliated entities. The remaining Defendants are the Centre Defendants,[3] The Northwestern Mutual Life Insurance Company ("NML"), Apollo Investment Corp. ("AIC"), and Ares Capital Corp. ("ARCC"), which were controlling and other significant equity holders of the Debtors' parent - non-Debtor DSI Holding Company, Inc. (the "DSI Parent") - and/or the long-term debt holders of non-Debtor DSI Renal, Inc. ("DSI Renal"), a wholly owned subsidiary of DSI Renal Holdings.

In the Complaint, the Trustee asserts that the Defendants effectuated a fraudulent scheme through a complex prepetition restructuring of Debtor DSI Renal Holdings and certain of its subsidiaries (the "Restructuring") that stripped the Debtors of substantially all of their valuable assets, namely the kidney dialysis business of DSI Renal, for little to no consideration and then turned around and sold those assets in the DaVita Acquisition[4] for over half a billion dollars. According to the Trustee, while the Defendants received hundreds of millions of dollars for the alleged wrongful activity, the Debtors and their creditors were left with little to show for it except millions of dollars of non-insider claims. The Court has already decided four other motions for

---

[2] *See, e.g.*, *Burtch v. Owlstone, Inc. (In re Advance Nanotech, Inc.)*, No. 13-51215, 2014 WL 1320145, *2 (Bankr. D. Del. Apr. 2, 2014) ("After *Stern v. Marshall*, the ability of bankruptcy judges to enter interlocutory orders in proceedings . . . has been reaffirmed . . . ."); *Boyd v. King Par, LLC*, No. 11-CV-1106, 2011 WL 5509873, at *2 (W.D. Mich. Nov. 10, 2011) ("[U]ncertainty regarding the bankruptcy court's ability to enter a final judgment . . . does not deprive the bankruptcy court of the power to entertain all pretrial proceedings, including summary judgment motions.").

[3] The Centre Defendants are, collectively, Centre Partners Management LLC, Centre Bregal Partners, L.P., Centre Bregal Partners II, L.P., Centre Capital Investors IV, L.P., Centre Capital Investors V, L.P., Centre Capital Non-Qualified Investors IV, L.P., Centre Capital Non-Qualified Investors V, L.P., Centre Partners Coinvestment IV, L.P., Centre Partners Coinvestment V, L.P., Centre Partners IV, L.P., Centre Partners IV, LLC, Centre Partners V, L.P., and Centre Partners V, LLC.

[4] *See infra* note 5 and accompanying text.

summary judgment filed by one or more of the Defendants.[5] A more detailed summary of the Restructuring is set forth in those Opinions and incorporated herein.

As the Complaint currently stands,[6] Counts 1 through 4 assert claims against all Defendants except for Messrs. Pollack, Bergman, and Schnabel for the avoidance and recovery of alleged actual and constructive fraudulent transfers under the Bankruptcy Code and Delaware state law. Count 5, alleged against the D&O Defendants and the Centre Defendants, asserts claims for breach of fiduciary duty. Count 6, alleged against all Defendants, asserts claims for aiding and abetting breach of fiduciary duty. The final remaining count, Count 7, alleged against all D&O Defendants except Defendant Yalowitz, asserts claims for corporate waste.

By the D&O Motion, Defendants Murphy and Yalowitz[7] seek summary judgment in their favor on the Trustee's fraudulent transfer claims. Additionally, Defendant Yalowitz seeks summary judgment in his favor on the Trustee's breach of fiduciary duty claim and aiding and abetting breach of fiduciary duty claim. By the Aiding and Abetting Motions and In Pari Delicto Motion, Defendants NML, AIC, and ARCC seek summary judgment in their favor on the Trustee's aiding and abetting breach of fiduciary duty claim.

## III. APPLICABLE LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that a court may grant summary judgment in whole or in part of a claim or defense "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] Summary judgment serves to "isolate and dispose of factually unsupported claims or defenses" and avoid unnecessary trial where the facts are settled.[9] Thus, at the summary judgment stage, the

---

[5] *See Giuliano v. Schnabel (In re DSI Renal Holdings, LLC)*, No. 14-50356, 2020 WL 550987 (Bankr. D. Del. Feb. 4, 2020) (the "Opinion No. 1"); *Giuliano v. Schnabel (In re DSI Renal Holdings, LLC),* No. 14-50356, 2020 WL 1509447 (Bankr. D. Del. Mar. 30, 2020) ("Opinion No. 2" and together with Opinion No. 2, the "Prior Opinions"). Capitalized terms used but undefined herein shall have the meanings ascribed to them in the Prior Opinions.

[6] As filed, the Complaint alleged nine counts against some or all of the Defendants plus CDSI I Holding Co., Inc. ("CDSI I"), CDSI II Holding Co. Inc. ("CDSI II"), and Ken Kencel. The Trustee voluntarily dismissed without prejudice CDSI I and CDSI II on August 2, 2013. He also voluntarily dismissed without prejudice Mr. Kencel on November 1, 2013. During oral argument on motions to dismiss filed in August 2013, the Trustee voluntarily withdrew without prejudice Count 9. On July 20, 2017, the Court issued its Opinion on the dismissal motions and dismissed Count 7 as to the Centre Defendants and Defendant Yalowitz as well as Count 8 in its entirety. *See Giuliano v. Schnabel (In re DSI Renal Holdings, LLC)*, 574 B.R. 446 (Bankr. D. Del. 2017). On May 26, 2020, following completion of briefing on the D&O Motion, the Court entered judgment in favor of Defendants Pollack, Bergman, and Schnabel on the Trustee's fraudulent transfer claims (Counts 1-4). *See* Adv. D.I. 263

[7] As explained in note 6, the Court has addressed the relief sought in the D&O Motion by Defendants Pollack, Bergman, and Schnabel.

[8] FED. R. CIV. P. 56(a).

[9] *Delta Mills, Inc. v. GMAC Commercial Fin. LLC (In re Delta Mills, Inc.)*, 404 B.R. 95, 104 (Bankr. D.

court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.[10]

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[11] A moving party bears the initial burden of demonstrating the absence of a dispute of material fact.[12] Then, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."[13] The nonmoving party cannot defeat a summary judgment motion based on conclusory allegations and denials.[14] Moreover, "the mere existence of some alleged factual dispute between the parties" cannot defeat a properly supported summary judgment motion.[15] Rather, a material fact is one that "might affect the outcome of the suit under governing law[,]"[16] and a dispute concerning a material fact is present "when reasonable minds could disagree on the result."[17] A court should view the facts and all permissible inferences from those facts in the light most favorable to the non-moving party.[18] Any doubt must be construed in the non-moving party's favor.[19]

## IV. LEGAL DISCUSSION

### A. *Fraudulent Transfer Claims Against Defendants Murphy and Yalowitz*

In Counts 1 through 4, the Trustee seeks to avoid and recover from Defendants Murphy and Yalowitz approximately $11.4 million of proceeds from the DaVita Acquisition that they received on account of CDSI I restricted stock and options (the "MIP Securities") issued to them following the Restructuring. The future grants of the MIP Securities to Defendants Murphy and Yalowitz were contemplated by the Restructuring and in connection therewith, CDSI I reserved shares of its stock for issuance to the recipients. The movants received the MIP Securities following the Restructuring when the required conditions were met in connection with their post-Restructuring employment.[20]

---

Del. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also* FED. R. CIV. P. 56(c).

[11] *Celotex*, 477 U.S. at 322.

[12] *Id.* at 323.

[13] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

[14] FED. R. CIV. P. 56(e); *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).

[15] *Anderson*, 477 U.S. at 247-48.

[16] *Id.* at 248.

[17] *Delta Mills*, 404 B.R. at 105.

[18] *Matsushita*, 475 U.S. at 587-88; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[19] *Delta Mills*, 404 B.R. at 105.

[20] Prior to the Restructuring, Defendant Murphy was the President, Chief Executive Officer, and a Director of DSI Parent. Defendant Yalowitz served as Executive Vice President, Secretary, and General Counsel of

In the D&O Motion, Defendants Murphy and Yalowitz contend that summary judgment in their favor on the Trustee's fraudulent transfer claims with respect to the MIP Securities' proceeds is appropriate because the MIP Securities and related proceeds were not "transfer[s] of an interest of the debtor in property" as required under sections 544(b) and 548 of the Bankruptcy Code. Rather, according to the movants, the MIP Securities were received as incentive compensation for their employment contributions after the Restructuring. They allege – and the Trustee does not dispute – that there is nothing in the record to value their services or to suggest that Defendants Murphy and Yalowitz were overpaid. In opposition, the Trustee argues that the Restructuring, the steps of which are collapsible, was a fraudulent transfer of which the allocation and issuance of the MIP Securities to Defendants Murphy and Yalowitz were essential parts. Accordingly, the Trustee argues that he has the right to avoid the proceeds of the DaVita Acquisition received by Defendants Murphy and Yalowitz on account thereof.

As explained in Opinion No. 2, the Trustee challenges the transfer of CDSI I stock to the Defendants in the Restructuring. This stock, according to the Trustee, represents the Debtors' property (*i.e.* DSI Renal Holdings' shares in DSI Renal) allegedly fraudulently transferred to the Defendants through the multi-step collapsible Restructuring. However, because DaVita purchased the stock of CDSI I in the DaVita Acquisition, the Trustee acknowledges that the stock cannot be recovered if he should prevail on his claims. He therefore seeks to recover as damages all amounts received by each Defendant in the DaVita Acquisition on account of, among other things, their CDSI I share holdings, plus prejudgment interest.

As previously held by the Court in Opinion No. 2, the Trustee may not recover any portion of the DaVita Acquisition proceeds from the Defendants unless he is able to prove that the proceeds were received by the Defendants on account of CDSI I stock that should have been issued to DSI Renal Holdings on account of its contributions to the Restructuring. In other words, the Trustee must show that, as a result of the Restructuring, DSI Renal Holdings received too little CDSI I stock and that, by extension, one or more of the Defendants received too much. In such a scenario, the excess portion is the debtor-property allegedly fraudulently transferred. Here, with respect to his fraudulent transfer claims against Defendants Yalowitz and Murphy, the Trustee has not produced any evidence of the like. Accordingly, the Trustee has failed to prove that Defendants Murphy and Yalowitz received a transfer of an interest of the Debtors in property, and because it

---

DSI Parent. Following the Restructuring, Defendant Murphy served as President and Chief Executive Officer of CDSI I and CDSI II. Defendant Yalowitz served as Executive Vice President, Secretary, and General Counsel of CDSI I and CDSI II. Additionally, before and after the Restructuring, Defendants Murphy and Yalowitz held other officer and/or director positions within the company's corporate structure, including with respect to DSI Renal.

is his burden to do so,[21] his fraudulent transfer claims against them related to proceeds received as a result of the MIP Securities fail.[22]

The Trustee also seeks in Counts 1 through 4 to avoid and recover approximately $4.2 million in "Change of Control" payments made to Defendants Murphy and Yalowitz from the DaVita Acquisition proceeds (the "CoC Payments"). Defendants Murphy and Yalowitz moved for summary judgment in the D&O Motion on Trustee's Counts 1 through 4 but they did not address the CoC Payments in the motion or in the related briefing. Instead they focused entirely on the proceeds they received on account of the MIP Securities. Similarly, the Trustee did not address the CoC Payments in his briefing submitted in response to the D&O Motion. At oral argument, Defendants Murphy and Yalowitz requested for the first time that the Court grant summary judgment on Counts 1 through 4 with respect to the CoC Payments. They argued that the payments were on account of DSI Renal liabilities and not on account of lost Debtor property, thus making summary judgment in their favor appropriate for the reasons set forth by the Court in Opinion No. 2. Through a letter submitted after argument, Defendants Murphy and Yalowitz further explained that the Court may act with respect to the CoC Payments pursuant to Rule 56(f)(2), which permits a court to grant a summary judgment motion "on grounds not raised by a party" and Rule 56(c)(3), which allows a court on summary judgment to consider any materials that are in the record, even if they are not cited by a party.

At oral argument, the Trustee objected to the Court's consideration of the CoC Payments because he was not provided adequate notice and opportunity to respond. The Court agrees with the Trustee that it would be improper for it to consider the new relief requested by Defendants Murphy and Yalowitz. Although they suggest that judgment in their favor on the CoC Payments would require a straightforward application of the record to the Court's prior legal holding, *sua sponte* grants of summary judgment should be approached with caution.[23] Moreover, the Court is not confident that the record is fully developed on this issue. Accordingly, it will refrain from considering whether summary judgment in favor of Defendants Murphy and Yalowitz is appropriate on Counts 1 through 4 with respect to the CoC Payments.

### B.  *Breach of Fiduciary Duty Claim Against Defendant Yalowitz*

In Count 5, the Trustee asserts that Defendant Yalowitz breached his fiduciary duties through knowing and substantial participation in the Restructuring. Specifically, Defendant Yalowitz signed the GRA that contemplated and set forth the series of transactions effectuating

---

[21] *See Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 211 (3d Cir. 2006) ("The party bringing the fraudulent conveyance action bears the burden of proving each of the[] elements by a preponderance of the evidence."); *see also Miller v. American Capital, Ltd. (In re NewStarcom Holdings, Inc.)*, 547 B.R. 106, 117-18 (Bankr. D. Del. 2006) ("[W]here there is a complete failure of proof concerning an essential element of the nonmoving party's case, Rule 56(c) necessarily renders all other facts immaterial and mandates a ruling in favor of the moving party").

[22] Given this conclusion, the Court need not address the balance of the arguments made by the parties with respect to the request of Defendants Murphy and Yalowitz for summary judgment on Counts 1 through 4.

[23] *See Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 224-25 (3d Cir. 2004).

the Restructuring, failed to object to or caution directors and other officers against the Restructuring, and received personal benefits from the Restructuring, including the MIP Securities. Moreover, the Trustee points to emails and documents indicating that Defendant Yalowitz advised outside counsel as to the liabilities to be avoided in the Restructuring, took actions to shield DSI Renal Holdings and DSI Hospitals from the assertion of claims on which they are co-obligors, and admitted that the Restructuring was done to avoid guaranteed debt.

By the D&O Motion, Defendant Yalowitz seeks judgment as a matter of law, contending that the responsibility for approving or rejecting the Restructuring belonged to the Debtors' board of directors on which he did not sit, that as an officer he did not owe a duty to resist or interfere with the board's decisions, and that it was impossible for him to override any board decision with respect to the Restructuring. Given that the Restructuring was not within the scope of his limited sphere of authority, Defendant Yalowitz argues that he did not owe, and thus, cannot be liable for breaching, any fiduciary duties with respect to the Restructuring.

The Court disagrees with Defendant Yalowitz that summary judgment is appropriate. As an officer, Delaware law[24] provides that Defendant Yalowitz owed the same fiduciary duties as directors when acting within the scope of his authority and fulfilling his responsibilities.[25] In support of his position, Defendant Yalowitz cites *Miller v. American Capital, Ltd. (In re NewStarcom Holdings, Inc.)*,[26] in which the court granted summary judgment on a breach of fiduciary duty claim springing from a sale in which the defendants were the buyers, had no power to authorize the sale, and "sat on one side of the table, not both."[27] Similarly, in the case of *Bridgeport Holdings, Inc. v. Boyer (In re Bridgeport Holdings, Inc.)*,[28] also relied upon by Defendant Yalowitz, the court dismissed breach of fiduciary claims against officers related to a sale, holding that the complaint failed to identity any offending acts the defendants took in their capacity as officers and noting that it could not understand how the defendants violated any duties that they might have owed given that the sale decision was entrusted to directors.

The circumstances presented in *NewStarcom* and *Bridgeport Holdings* are not the same as those here. The evidence demonstrates that Defendant Yalowitz played a part in the Restructuring as an officer, including General Counsel, of DSI Parent. Specifically, Defendant Yalowitz was given the responsibility and authority from the board to execute, deliver, and perform the GRA with such changes as Defendant Yalowitz approved, and he signed it. Moreover, the Trustee's proffered evidence suggests that Defendant Yalowitz assisted in the formulation of the Restructuring, knew its purposes and consequences, and received benefits thereunder. Taking every factual inference in the Trustee's favor as the Court must, the evidence is sufficient to create triable issues of fact on the Trustee's claim against Defendant Yalowitz for breach of fiduciary duty and thus, the movant's request for summary judgment on Count 5 will be denied.

---

[24] As discussed in Opinion No. 1, Delaware law applies to the Trustee's state law claims. *See* Opinion No. 1, No. 14-50356, 2020 WL 550987, at *9 & n.61.

[25] *See, e.g.*, *Gantler v. Stephens*, 965 A.2d 695, 709 & n.36 (Del. 2009).

[26] 547 B.R. 106 (Bankr. D. Del. 2006).

[27] *Id.* at 123.

[28] 388 B.R. 548, 574 (Bankr. D. Del. 2008).

### C. *Aiding and Abetting Claims Against Defendants Yalowitz, NML, ARCC, and AIC*

Count 6 is the Trustee's claim for aiding and abetting breach of fiduciary duty against, among others, Defendants Yalowitz, NML, ARCC, and AIC. Each has moved for summary judgment in their favor. A claim of aiding and abetting fiduciary breach requires (1) the existence of a fiduciary relationship, (2) a breach of fiduciary duty, (3) knowing participation in that breach by a party not in direct fiduciary relationship, and (4) damages proximately caused by the breach."[29]

#### 1. *Defendant Yalowitz*

In support of the claim against Defendant Yalowitz for aiding and abetting breach of fiduciary duty, the Trustee proffers the same evidence and arguments made in support of his claim against Defendant Yalowitz for breach of fiduciary duty. However, "as an executive officer, . . . [Defendant Yalowitz] himself owes fiduciary duties to the corporation, and therefore any conduct of his rising to the level of aiding and abetting would be a breach of his own fiduciary duties."[30] Accordingly, the Court will grant summary judgment in favor of Defendant Yalowitz on Count 6.

#### 2. *Defendants NML, AIC, and ARCC*

By the Aiding and Abetting Motions, Defendants NML, AIC, and ARCC seek summary judgment on Count 6, asserting that the Trustee has not proffered sufficient evidence that they knowingly participated in the alleged breach of fiduciary duty. This element of an aiding and abetting claim requires a defendant to have had actual or constructive knowledge of, and provided substantial assistance in, the fiduciary breach.[31] Actual knowledge requires that the alleged aider and abettor act "knowingly, intentionally, or with reckless indifference . . . that is, with an 'illicit state of mind[,]'"[32] whereas constructive knowledge may be found "only if a fiduciary breaches its duty in an inherently wrongful manner"[33] by engaging in conduct "so egregious"[34] so as to put

---

[29] *RBC Capital Markets LLC v. Jervis*, 129 A.3d 816, 861 (Del. 2015) (internal citations and quotation marks omitted); *NewStarcom*, 547 B.R. at 119.

[30] *Higher Educ. Mgmt. Grp., Inc. v. Mathews*, No. 9110-VCP, 2014 WL 5573325, at *13 (Del. Ch. Nov. 3, 2014) (citing *Gantler*, 965 A.2d. at 708-09); *accord Caspian Select Credit Master Fund Ltd. v. Gohl*, No. 10244-VCN, 2015 WL 5718592, at *13 (Del. Ch. Sep. 28, 2015).

[31] *See, e.g.*, *Malpiede v. Townson*, 780 A.2d at 1075, 1097 (Del. 2011); *RBC Capital*, 129 A.3d at 862; *In re Del Monte Foods Co. S'holders Litig*., 25 A.3d 813, 836 (Del. Ch. 2011); *NewStarcom*, 547 B.R. at 119-20.

[32] *RBC Capital*, 129 A.3d at 862 (quoting *In re Oracle Corp.*, 867 A.2d 904, 931 (Del. Ch. 2004)).

[33] *McGowan v. Ferro*, No. 18672, 2002 WL 77712, at *2 (Del. Ch. Jan. 11, 2002) (internal citation omitted).

[34] *NewStarcom*, 547 B.R. at 124; *see also In re USA Cafes, L.P. Litig.*, 600 A.2d 43, 56 (Del. Ch. 1991) (knowledge of breach could be inferred from participation in transaction where nearly 25% of purchase price was paid directly to target's directors and officers); *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 392-93 (Del. Ch. 1999) (similar facts involving 20% of purchase price).

a third party on notice of a breach. Substantial assistance, "by definition, implies active participation or affirmative action."[35]

Here, the Court need not address the knowledge prong because the Trustee has failed to provide any evidence from which a reasonable trier-of-fact could conclude that NML, ARCC, and AIC substantially assisted in a fiduciary breach. In support of this required element, the Trustee proffers the following:

> [e]ach executed and carried out the agreements which effectuated the fraudulent Restructuring, each received stock in CDSI I, the new holding company formed to take ownership of the Renal Business that was stripped away from the Debtor, and each received substantial payouts when the Debtor's Renal Business was sold to DaVita.[36]

Although the Trustee describes the foregoing as "obvious and substantial" participation,[37] the Court cannot conclude the same on record presented. The undisputed facts show that NML, ARCC, and AIC engaged in nothing more than an arm's length transaction to protect and maximize recoveries on their debt and/or equity holdings. Generally, arm's length bargaining will not give rise to aiding and abetting liability.[38] In an arm's length transaction, a transacting party has "every right to pursue the best possible deal for itself."[39] Notwithstanding this general rule however, an arm's length bargainer may be held liable "if it attempts to create or exploit conflicts of interest in the board" or induce fiduciary breach.[40]

Here, there has been no showing to contravene the application of the general rule. The Trustee has not put forth any facts to support a finding that NML, AIC, or ARCC proposed, induced,

---

[35] *NewStarcom*, 547 B.R. at 126, 132 (internal quotation marks omitted).

[36] Adv. D.I. 205 at 114.

[37] *Id.*

[38] *See, e.g.*, *In re Gen. Motors (Hughes) S'holder Litig.*, No. 20269, 2005 WL 1089021, at *26 (Del. Ch. May 4, 2005) ("This Court has consistently held that 'evidence of arm's length negotiations with fiduciaries negated a claim of aiding and abetting, because such evidence precludes a showing that the defendants knowingly participated in the breach by the fiduciaries.'" (quoting *In re Frederick's of Hollywood, Inc. S'holders Litig.*, No. 15944, 1998 WL 398244, at *3 n.8 (Del. Ch. July 9, 1998) and citing cases)).

[39] *Dent v. Ramtron Int'l Corp.*, No. 7950-VCP, 2014 WL 2931180, at *18 (Del. Ch. Jun. 30, 2014); *see also Ryan v. Lyondell Chem. Co.*, No. 3176, 2008 WL 2923427, *21 (Del. Ch. 2008) ("A hard bargain, however, cannot suffice to establish an aiding and abetting claim where the parties negotiated at arm's-length."), *rev'd on other grounds*, 970 A.2d 235 (Del. 2009).

[40] *Del Monte Foods*, 25 A.3d at 837; *accord Malpiede*, 780 A.2d at 1101 n.92 (Del. 2001); *In re Rural Metro Corp. S'holders Litig.*, 88 A.3d 54, 97 (Del. Ch. 2014); *Morgan v. Cash*, No. 5053, 2010 WL 2803746, at *8 (Del. Ch. July 16, 2010); *In re Hechinger Inv. Co. of Del., Inc.*, 278 Fed. App'x 125, 130 (3d Cir. 2008); *NewStarcom*, 547 B.R. at 120.

orchestrated, encouraged, or otherwise substantially assisted a breach of fiduciary duty.[41] Accordingly, the Court will grant the relief requested in the Aiding and Abetting Motions.[42]

## V. CONCLUSION

For the foregoing reasons, the Court will (1) grant summary judgment in favor of Defendants Murphy and Yalowitz on Counts 1 through 4 with respect to the proceeds received as a result of the MIP Securities; (2) deny summary judgment on Count 5 as requested by Defendant Yalowitz; and (3) grant summary judgment in favor of Defendants Yalowitz, NML, AIC, and ARCC on Count 6.

Date: December 2, 2020

Karen B. Owens
United States Bankruptcy Judge

---

[41] *Morgan*, No. 5053, 2010 WL 2803746, at *8 ("[T]he long-standing rule that arm's-length bargaining is privileged and does not, absent actual collusion and facilitation of fiduciary wrongdoing, constitute aiding and abetting helps to safeguard the market for corporate control by facilitating the bargaining that is central to the American model of capitalism.").

[42] Given this conclusion, the relief requested in the In Pari Delicto Motion is moot.